UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOHN PROPST,

    Plaintiff,

v.                        CASE #

HARTFORD LIFE AND
ACCIDENT INSURANCE
COMPANY and FEDERAL
EXPRESS CORPORATION ,

    Defendants.
_____

## COMPLAINT

The Plaintiff, JOHN PROPST (PROPST), sues Defendants, HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY (HARTFORD) and FEDERAL EXPRESS CORPORATION (FEDEX), and states:

### Jurisdiction and Venue

1. This is an action for relief under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et. seq.

2. This Court has jurisdiction pursuant to ERISA § 502, 29 U.S.C. §1132.

3. HARTFORD is an insurance company licensed to transact business in Florida, which is or was at all relevant times engaged in business in this District.

4. PROPST was at all relevant times employed by FEDEX at a location within this District.

5. FEDEX is the Plan Sponsor and administrator of an employee benefit plan providing disability benefits to its employees (the Plan).

6. HARTFORD is the claims administrator under the employee benefit plan providing disability benefits to FEDEX employees.

7. At all relevant times, PROPST is and/or was a participant in the Plan incident to his employment.

8. Venue is proper within this District.

**Standard of Review Applicable to this ERISA Action**

9. FEDEX provides finanancial protection in case an injury or illness prevents its employees from working by creating a group Short Term Disability plan (Federal Express Corporation Short term Disability Plan). A copy of the Short Term Disability plan is attached hereto as Exhibit "A".

10. FEDEX provides finanancial protection in case an injury or illness prevents its employees from working by creating a group Long Term Disability plan (Federal Express Corporation Long Term Disability Plan). A copy of the Long Term Disability plan is attached hereto as Exhibit "B".

11. Short Term and Long Term Disability Plan benefits are paid from a trust funded by FEDEX.

12. HARTFORD made benefits determinations under the group policies, including the determination made on Plaintiff's Short Term Disability and Long Term Disability claims.

13. No document has been provided to Plaintiff which purports to grant discretionary authority to HARTFORD.

14. No document has been provided to Plaintiff which purports to grant discretionary authority to FEDEX.

15. The Short Term Disability group plan was drafted in its entirety by FEDEX.

16. The Long Term Disability group plan was drafted in its entirety by FEDEX.

17. No other plan documents exist other Exhibits A and B.

18. No originating plan document exists that instituted the Short Term Disability Plan.

19. No originating plan document exists that instituted the Long Term Disability Plan.

20. No originating plan document or other document exists in which FEDEX reserved any discretionary authority to itself in relation to the Short Term Disability Plan.

21. No originating plan document or other document exists in which FEDEX reserved any discretionary authority to itself in relation to the Long Term Disability Plan.

22. The employees or agents of FEDEX and HARTFORD did not discuss or correspond about the existence, meaning, or significance of delegating discretionary authority from FEDEX to HARTFORD.

23. At the inception of the Short Term Disability Plan, FEDEX did not retain to itself the authority to delegate discretionary authority of any type to an insurance company from which it was to hire to make claim determinations on the Short Term Disability Plan benefits.

24. At the inception of the Long Term Disability Plan, FEDEX did not retain to itself the authority to delegate discretionary authority of any type to an insurance company from which it was to hire to make claim determinations on the Long Term Disability Plan benefits.

25. There is no mention of any delegation of discretion to HARTFORD within the four corners of the Short Term and Long Term Disability Plans.

26. HARTFORD was not delegated discretionary authority such that its claim decision is entitled to a discretionary or arbitrary and capricious standard of review, because of one or more of the following:

    a. FEDEX never had the authority to delegate discretion to HARTFORD following the inception of its disability plan;

    b. Discretionary authority is a material concept that HARTFORD never discussed or negotiated with FEDEX;

    c. The Short Term Disability group insurance plan is a contract of adhesion drafted entirely by the funding source company which cannot inject discretion into the plan for the first time;

    d. The Long Term Disability group insurance plan is a contract of adhesion drafted entirely by the funding source company which cannot inject discretion into the plan for the first time;

    e. If it had the power to delegate discretion, FEDEX did not properly delegate discretionary authority over claims decisions to HARTFORD.

27. De novo review applies to this action.

## Claim for Disability Benefits Under the Short Term Disability Plan

28. PROPST restates and incorporates by reference paragraphs 1-36.

29. PROPST stopped working due to his depression, anxiety, panick attacks and agoraphobia on October 12, 2020.

30. PROPST applied for Short Term Disability on October 21, 2020.

31. PROPST was approved for Short Term Disability from October 22, 2020, through November 2, 2020.

32. HARTFORD terminated PROPST's Short Term Disability benefits on November 3, 2020.

33. PROPST filed a timely appeal on April 26, 2021.

34. HARTFORD sent PROPST's claim file to their peer reviewer, Edan Critchfield, Psy.D. HARTFORD also communicated with PROPST's treating provider, Nicole Galassi, LMHC, despite having all previous authorizations revoked.

35. Dr. Critchfield never saw or spoke to PROPST, but, came to the conclusion that PROPST's medical records did not support cognitive deficits or psychological symptoms that would result in functional impairments or prevent full-time employment.

36. POPST's treating provider, Ms. Galassi reviewed the peer review report and wrote a letter on July 3, 2021, stating she did not agree with Dr. Critchfield's findings that PROPST was capable of working. Ms. Galassi stated "Based off of my time and assessment with John Propst, he is not capable of working at this time, due to his mental health."

37. Ms. Galassi's statement was sent to HARTFORD on July 9, 2021.

38. On July 16, 2021, HARTFORD requested a 45-day extension to make its determination.

39. On August 3, 2021, HARTFORD sent an addendum to their peer review report. The addendum offered no new information other than questions asked to Dr. Critchfield.

40. The following issues were acknowledged by the undersigned counsel on August 23, 2021, in response to Dr. Critchfield's' report:

    a. Dr. Critchfield's statement that Ms. Galassi's report of severe functional limitations "is inconsistent with mental status exam completed 12/15/2020" is not an accurate statement. Ms. Galassi is the person who conducted the mental status examination on that date. Nothing required her to put down all her observations on that date into her notes, and anything that she observed or recalled is based upon PROPST's mental status on that date. Ms. Galassi's recollection is entirely consistent with the mental status exam she performed because she is the one who performed it and only she can provide that detail. Dr. Critchfield had no basis for knowing what Ms. Galassi observed and recalled, and for him to supplant his opinion in place of her recollection without having been present defies logic and factual reality.

    b. Dr. Critchfield's opinion that the prescription of psychotropic medication and outpatient psychotherapy

appointments is not consistent with an individual who could have functional limitations that prevent them from working is inconsistent with clinical mental health treatment all over the country. Dr. Critchfield would seem to indicate that a person must be severely medicated to the point of being catatonic or acquiring inpatient care to be prevented from maintaining work. Dr. Critchfield did not acknowledge that the prescription of psychotropic medication establishes the objective component of the Plan's Section 1.1, because no medical professional would prescribe such mind-altering medication in the absence of the required psychological abnormalities required by the plan.

c. Dr. Critchfield failed to address the actual definition of disability which, according to the Summary Plan Description is: "You are considered disabled if a physical or mental illness or injury prevents you from doing your job." Dr. Critchfield does not even know what PROPST's job was or what the job duties are, or what would be the level of limitation that would prevent PROPST from being a Senior Security Specialist.

    d. Dr. Critchfield's opinion that a person who has to "leave work once daily to prevent a panic attack" is something that "could be accommodated with most work schedules that allow lunch/rest breaks" utterly disregards the random nature of panic attacks. Dr. Critchfield does not challenge that PROPST would need to leave work once on a daily basis as his panic attacks dictate.

41. HARTFORD did not provide anything indicating that Dr. Critchfield has any expertise other than psychology, and certainly no expertise in vocational rehabilitation or job placement. Dr. Critchfield did not identify the length of the absence that would be required or acknowledge how long PROPST would have to leave the work setting, which is clearly crucial to any such opinion.

42. HARTFORD upheld its original denial on September 23, 2021.

43. HARTFORD stated PROPST exhausted all administrative levels of appeal, and no further appeals would be considered.

44. HARTFORD has refused to pay the benefits sought by PROPST and as ground for such refusal has alleged that Plaintiff does not meet the definition of disability.

**Short Term Disability Benefits in Controversy**

45. PROPST is entitled to Short Term Disability benefits under the Plan from November 3, 2020, through April 22, 2021.

46. Under the Short Term Disability Plan, a participant is and was eligible to receive Short Term Disability benefits when the participant meets the following definition stated in the group insurance plan funding the Plan:

> Disability or Disabled shall mean Occupational Disability; provided, however, a Covered Employee shall not be deemed to be Disabled or under a Disability unless he is, during the entire period of Disability, under the direct care and treatment of a Practitioner and such Disability is substantiated by significant objective findings which are defined as signs which are noted on a test or medical exam and which are considered significant anatomical, physiological or psychological abnormalities which can be observed apart from the individual's symptoms. In the absence of significant objective findings, conflicts with managers, shifts and/or work place setting will not be factors supporting disability under the Plan.
>
> Notwithstanding the foregoing, effective for Disabilities that begin on or after April 1, 2020, Disability or Disabled shall mean an Occupational Disability; provided, however, a Covered Employee shall not be deemed to be Disabled or under a Disability unless he is, during the entire period of Disability, under the direct care and treatment of a Practitioner and such Disability is substantiated by medical evidence, which may include but is not limited to examination findings, test results, treatment details, or any other details as deemed relevant by the Claim Administrator. In the absence of medical evidence, contlicts with managers,

shifts and/or work place setting will not be factors supporting disability under the Plan.

47. PROPST has met the definition of disability based upon restrictions and limitations stemming from depression, anxiety, panic attacks, and agoraphobia. The unpredicatibility of PROPST's conditions and medication side effects cause hime to have a reduced qualitative and quantitative performance reduction of his duties, compared to the average worker.

48. PROPST's treating physician's notes state that his restrictions and limitations have not improved since HARTFORD refused to pay Short Term Disability benefits.

49. PROPST has not been released back to work.

50. PROPST is entitled to Short Term Disability benefits at the monthly rate of $1,088.74.

51. There are 5.63 months of past-due monthly benefit payments owed at the net monthly rate of $1,088.74, therefore HARTFORD has deprived PROPST of the aggregate sum of $6,304.00.

52. Plaintiff is entitled to benefits herein because:

a) The benefits are permitted under the Plan.

b) Plaintiff has satisfied all conditions to be eligible to receive the benefits.

c) Plaintiff has not waived or relinquished entitlement to the benefit.

53.   Each monthly benefit payment owed since November 3, 2020, is a liquidated sum and became liquidated on the date the payment was due and payable.  Plaintiff seeks prejudgment interest on each such payment.

54.   Pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), PROPST is entitled to an award of reasonable attorney fees and costs incurred in an action brought under ERISA.  Plaintiff has been required to obtain the undersigned attorney to represent her in this matter and has agreed to a reasonable attorney fee as compensation to her for her services.

## Claim for Disability Benefits Under the Long Term Disability Plan

55.   PROPST restates and incorporates by reference paragraphs 1-65.

56.   PROPST applied for Long Term Disability on July 26, 2021.

57.   HARTFORD did not respond and PROPST applied for Long Term Disability again on October 1, 2021.

58.   PROPST was denied for Long Term Disability because he had not been paid for the full 26-week Short Term Disability benefit period

59.   HARTFORD did not consider PROPST's Long Term Disability claim on the merits.

60.   HARTFORD did not evaluate PROPST's disability under the Long Term Disability plan.

61. PROPST filed a timely appeal on May 11, 2022

62. HARTFORD denied the timely appeal on May 26, 2022.

63. HARTFORD again refused to conduct an evaluation of PROPST's disability under the Long Term Disability plan during this review.

64. HARTFORD uses its own denial of Short Term Disability benefits as the singular reason for its denial of Long Term Disability benefits, despite the following facts:

    e. On October 16, 2020, Mark Brinkman, M.D., noted that PROPST's anxiety was uncontrolled and worsened by being around others at work.

    f. On October 26, 2020, Dr. Brinkman noted that PROPST is unable to tolerate interpersonal interactions since the worsening of his anxiety due to agoraphobia, despite medication.

    g. On December 1, 2020, PROPST attended a session at Break Throughs of North Florida with Nicole Galassi, LMHC where PROPST reported he must leave work at least once a day to reset himself to avoid panic attacks.

    h. On December 14, 2020, Ms. Galassi submitted a form to HARTFORD stating Mr. Propst was unable to return to work and could not give a date as to when he could return.

    i. On December 15, 2020, Ms. Galassi stated in an Attending Physician Statement to HARTFORD that:

        i. PROPST would not be able to perform the same job at a different location or with a different employer.

        ii. PROPST's symptoms are severe enough to preclude him from social and occupational functioning.

        iii. PROPST's symptoms became severe enough to preclude him from social and occupational functioning in October 2020.

        iv. The expected duration of PROPST's work activity impairments are indefinite and there is no target date for him to return to work.

    j. On February 2, 2021 Ms. Galasi completed a Mental Residual Functional Capacity evaluation and reported that PROPST is incabaple of working a "low stress" job.

    k. Ms. Galassi reported PROPST is more focused on not having a panic attack during work than what the work function requires.

    l. PROPST's psychiatric conditions also exacerbate his physical symptoms as he will get nauseous. have heart palpitations, increase in blood pressure. and feel like he is going to pass out

65. Under the Long Term Disability Plan, a participant is and was eligible to receive Long Term Disability benefits when the participant meets the following definition stated in the group insurance plan funding the Plan:

> <u>Disability or Disabled</u> shall mean Occupational Disability or a Total Disability; provided, however, a Covered Employee shall not be deemed to be Disabled or under a Disability unless he is, during the entire period of Disability, under the direct care and treatment of a Practitioner and such Disability is substantiated by medical evidence, which may include but is not limited to examination findings, test results, treatment details, or any other details as deemed relevabt by the claims administrator. In the absence of medical evidence, conflict with managers, shifts and/or workplace setting will not be factors supporting disability under the plan.

66. PROPST's medical providers have noted that he suffers from generalized anxiety, agoraphobia, and panic attacks that affect his ability to function outside of his home.

67. HARTFORD has refused to acknowledge these medical findings.

68. HARTFORD has refused to pay the benefits sought by PROPST without considering his disabilities.

/

/

/

## Long Term Disability Benefits in Controversy

69. PROPST is entitled to Long Term Disability benefits under the Plan beginning May 18, 2021.

70. PROPST has met the definition of disability based upon restrictions and limitations stemming from depression, anxiety, panic attacks, and agoraphobia. The combination of PROPST's conditions and medication side effects causes severe fatigue and dizziness which requires him to sleep during the day.

71. PROPST's treating physician's notes prove his restrictions and limitations have not improved since HARTFORD refused to pay Short Term Disability benefits.

72. PROPST has not been released back to work.

73. PROPST's yearly income was $82,000.00, or $6,833.33 a month.

74. PROPST's Long Term Disability benefit percentage is 60% of his income, or $4,100.00 a month.

75. After offsets, PROPST is entitled to a net monthly benefit of $1,900.00.

76. There are 20 months of past-due monthly benefit payments owed at the net monthly rate of $1,900.00, therefore HARTFORD has deprived PROPST of the aggregate sum of $38.000.

77. Plaintiff is entitled to benefits herein because:

    a) The benefits are permitted under the Plan.

    b) Plaintiff has satisfied all conditions to be eligible to receive the benefits.

    c) Plaintiff has not waived or relinquished entitlement to the benefit.

78. Each monthly benefit payment owed since May 18, 2021, is a liquidated sum and became liquidated on the date the payment was due and payable. Plaintiff seeks prejudgment interest on each such payment.

79. Pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), PROPST is entitled to an award of reasonable attorney fees and costs incurred in an action brought under ERISA. Plaintiff has been required to obtain the undersigned attorney to represent her in this matter and has agreed to a reasonable attorney fee as compensation to her for her services.

WHEREFORE, the Plaintiff, JOHN PROPST, asks this Court to enter judgment against the Defendants, HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY and FEDERAL EXPRESS CORPORATION, finding that:

(1) The Plaintiff is entitled to Short Term Disability benefits from Novemebr 3, 2020, through April 22, 2021

(2) The Plaintiff is entitled to Long Term Disability benefits from April 23, 2021, through the filing of this lawsuit; and

(3) The Plaintiff must be awarded Short Term Disability benefits in the amount not paid to the Plaintiff from Novemebr 3, 2020, through April 22, 2021, and Long Term Disability benefits from April 23, 2021, to the date of filing this lawsuit total of $44,304.00 together with prejudgment interest at the legal rate on each monthly payment from the date it became due until the date it is paid; and

(4) The Plaintiff must be awarded reasonable attorney fees and costs incurred in this action; and

(5) For such other and further relief as this Court deems just and proper, including but not limited to:

   a. a declaration that Plaintiff's same claim for benefits continues after the last date of benefits awarded by the Court, without need to file a new application for benefits, and

   b. remanding Plaintiff's claim to the Plan Administrator for further action to address continuing benefits after the final date of benefits awarded by this Court, and

   c. ordering Defendant to advise Plaintiff's former employer or any other necessary entity that benefits in this action were properly paid through the date of this Court's Order awarding benefits for purposes of coordinating or

reinstating any ancillary benefits which should properly be paid or for which coverage should be awarded as a result of Plaintiff's receipt of disability benefits under the Plan.

Signed this 27th day of January 2023.

                                                    /s/ John v. Tucker
                                         JOHN V. TUCKER, ESQUIRE
                                         Florida Bar # 0899917
                                         TUCKER LAW GROUP, P.A.
                                         5235 16th St. North
                                         St. Petersburg, FL  33703
                                         Tel.:  (727) 572-5000
                                         Fax:  (727) 571-1415
                                         tucker@tuckerdisability.com
                                         *Lead Attorney and Lead Counsel for the Plaintiff*